---

R. A. Risu, Appellant, v. Iowa Portland Cement Company, Appellee.

**MASTER AND SERVANT:** Workmen's Compensation Act—Appeals.
1   Procedure for the taking of appeals is governed by Sec. 17, Ch. 270, Acts of the 37th G. A., even as to injuries occurring prior to July 1, 1917.

**MASTER AND SERVANT:** Injury "Arising Out of" Employment.
2   An injury to a servant who is, at the time, in the course of his employment "*arises out of*" his employment when it reveals *some* causal connection with the general conditions existing on the master's premises, even though such conditions do not generally exist in the particular place of work assigned to the servant, and even though, at the precise time of injury, the servant is performing an unnecessary but non-prohibited act personal to himself, i. e., lighting a cigarette.

PRINCIPLE APPLIED: A servant was an electrician. He came upon the master's premises, prepared himself for his work, and approached his work bench. In the act of so doing,

he struck a match and, lit a cigarette. Instantly thereafter, a violent explosion occurred. A portion of his left hand was blown away, and the left side of his body at the waist line was burned. Pieces of copper were discovered—presumably in the wound or clothing. An hour later, a dynamite cap was found in the pocket of the clothes which the servant wore at the time, and in the pocket from which he took the match. The servant denied that he consciously took such cap upon the premises. The commissioner did not find to the contrary. *Such caps were in use on other parts of the master's premises,* but their presence in the building where the servant in question worked was strictly forbidden. Smoking in the servant's building was not prohibited. It seems to have been conceded that the servant was injured by the explosion of one of these caps.

   *Held,* the injury *"arose out of"* the employment, and the lighting of the match did not deprive the servant of the benefits of the Compensation Act.

·MASTER AND SERVANT: "In the Course of Employment." A workman who, being on the master's premises, is in the act of approaching his work bench for the purpose of entering upon his daily task, is "in the course of his employment."

MASTER AND SERVANT: Findings of Fact on Appeal. The court will not disturb a non-fraudulent finding of fact by the industrial commissioner, but will set aside an order or decree of such commissioner when the facts so found are insufficient to support or warrant such an order or decree.

*Appeal from Polk District Court.*—THOS. J. GUTHRIE, Judge.

JANUARY 23, 1919.

REHEARING DENIED MAY 21, 1919.

THE nature of the action and the material facts are fully stated in the opinion.—*Reversed.*

*S. B. Allen,* for appellant.

*Don G. Allen* and *M. H. Cohen,* for appellee.

STEVENS, J.—I. This case comes to us on appeal from the judgment of the court below, sustaining the order of the industrial commissioner denying plaintiff compensation un-

der the Workmen's Compensation Act, for

**1. MASTER AND SERVANT: Workmen's Compensation Act: appeals.** injuries received to his left hand while in the employ of defendant. A motion filed by counsel for appellee to dismiss the appeal, upon the ground that the court is without jurisdiction thereof, was ordered submitted with the case, and counsel have furnished us with briefs and argument thereon. The ground of the motion is that the injury complained of occurred prior to July 1, 1917, and that plaintiff, in taking said appeal, should have followed the provisions of Section 2477-m33 of the 1913 Supplement. This section was repealed by Section 17, Chapter 270, Acts of the Thirty-Seventh General Assembly. Many other provisions of the Workmen's Compensation Act were repealed or amended thereby. Chapter 270 was approved April 21, 1917, and, so far as applicable to the case at bar, became effective July 1, 1917. It was there provided (Section 21) as follows:

"Nothing in this act shall be held to in any manner affect litigation now pending, or to apply to any case in which the injury occurred prior to July 1, 1917."

The appeal was taken within the time and in the manner required by Section 14, Chapter 270, but not within the time required by Section 2477-m33. Section 21, supra, evidently relates to the right of the employee to compensation, amount thereof, etc., and not to procedure. No appeal was possible until after Section 2477-m33 had been repealed, and Section 17 of Chapter 270, enacted in lieu thereof, had gone into effect. The procedure prescribed by the latter could alone, therefore, be followed. It was the obvious intention of the legislature to preserve the rights and liabilities of the parties as they existed at the time of the accident; but there is nothing in the language of Section 21 to indicate that the procedure prescribed by Section 14 is not to be followed in cases where the accident occurred prior to July 1, 1917. *Richardson v. Fitzgerald,* 132 Iowa 253; *McLane v.*

*Bonn,* 70 Iowa 752; *Drake v. Jordan,* 73 Iowa 707; *Farley v. O'Malley,* 77 Iowa 531.

The motion to dismiss the appeal should be, and is, overruled.

II.   The commissioner found the facts to be as follows:

2. MASTER AND SERVANT: injury "arising out of" employment.

"At the time of his injury, Robert A. Rish was performing service as an electrician for the Hawkeye Portland Cement Company. Just prior to the accident resulting in this injury, he had come upon the premises of his employer, prepared himself for the duties of the day, and approached his work bench in the electrical repair shop. He had just rolled a cigarette, which he placed in his mouth, and then struck a match for the purpose of lighting the same. He testifies he does not know whether he applied the match to the cigarette or not, but that, from the result of an explosion, he found himself prostrate upon the floor. A cigarette, which had been lighted and partially burned, was found upon the floor, as was also the match in question.

"Rish was found to have lost portions of the thumb and two fingers on his left hand. Near the waist line, toward his left side, he was found to have been severely burned. Careful scrutiny disclosed the presence of pieces of copper, upon which fact is based the plausible theory, commonly accepted, that these injuries had occurred from the explosion of a dynamite cap. An hour or so later, the locker in which the overalls worn by Rish at the time of the accident had been placed, was broken open by an employee of the company, upon the order of one in authority. By the testimony of three witnesses, it appears that a dynamite cap was discovered in the watch pocket of this garment, the same pocket from which Rish testified he secured the match with which to light his cigarette.

"Counsel utterly failed in this undertaking to prove that the defendant company injected into the service of this workman unusual peril by the common presence of dynamite caps about his place of service. The electrical repair shop was detached from any building in which dynamite caps had any right to be. It was not shown that any such explosive had ever been seen upon the work bench in question. The evidence justifies the conclusion that rules against the presence of dynamite caps in the electrical repair shop were very strict, and that a workman imperiled his engagement by this display of such explosives in this building."

To entitle plaintiff to compensation, under the provisions of the Workmen's Compensation Act, the injuries sustained must have arisen "out of and in the course of the employment," the burden of showing which rested upon him. *Griffith v. Cole Bros.*, 183 Iowa 415; *De Mann v. Hydraulic Eng. Co.*, 192 Mich. 594 (159 N. W. 380).

It is conceded that plaintiff, at the time of the accident, which occurred between six and seven o'clock A. M., was on the premises of the defendant for the purpose of engaging in the day's work, and, therefore, the finding of the commissioner that he was, at the time of the accident, in the course of his employment, must be sustained. *Griffith v. Cole Bros.*, supra; *Pace v. Appanoose County*, 184 Iowa 498. Did the injury, however, arise "out of" the employment? An injury, within the meaning of the Workmen's Compensation Act, is said by the court, in *Griffith v. Cole Bros.*, supra, to arise out of the employment when it appears "by a preponderance [of the evidence] that there is some causative connection between the injury and something peculiar to the employment (*Jones v. United States Mut. Acc. Assn.*, 92 Iowa 652). that it resulted from some risk reasonably incident to the employment, because 'out of' in-

3. MASTER AND SERVANT: "in course of employment."

volves the idea that the injury is in some sense due to the employment (*Fitzgerald v. Clarke & Son*, 2 K. B. [1908] 796) ; a causative danger peculiar to the work, and 'not common to the neighborhood,' an injury fairly traceable to the employment as a contributing cause,—to some hazard other than one to which the workman would have been equally exposed though in a different employment (*Mc-Nicol's* case, 215 Mass. 497) ; a hazard peculiar to the business which is 'the immediate cause' of the injury (*Rodger v. Paisley School Board*, 1 Scots Law Times [1912] 271 * * *) ; an injury due to something more than the normal risk to which all are subject, which, at the least, means that the employment necessarily accentuates the natural hazard attendant upon work done in the course of the employment (*State v. District Ct.*, 129 Minn. 502 [153 N. W. 119])." See, also, *Pace v. Appanoose County*, supra; *Mc-Nicol's* case, 215 Mass. 497 (102 N. E. 697).

Applying the above interpretation of the language of the act to the facts of the case at bar, did the injuries arise "out of the employment?" As will be observed from a careful reading of the cases cited, the tendency of the courts in all jurisdictions where similar acts are in force is to give a broad and liberal construction to the provisions thereof. Injuries received while the workman was engaged in ministering to himself, such as warming himself, seeking shelter, quenching his thirst, taking refreshment, food, fresh air, or resting in the shade, have been held compensable. Honnold on Workmen's Compensation, Section 111; *Northwestern Iron Co. v. Industrial Com.*, 160 Wis. 633 (152 N. W. 416) ; *Goodlet v. Caledonian R. Co.*, 4 F. (Ct. of Sess.) 986; *Moore v. Lehigh Valley R. Co.*, 169 App. Div. 177 (154 N. Y. Supp. 620) ; *Zabriskie v. Erie R. Co.*, 86 N. J. L. 266 (92 Atl. 385) ; *Hollenbach v. Hollenbach*, 181 Ky. 262 (204 S. W. 152) ; *O'Toole's Case*, 229 Mass. 165 (118 N. E. 303) ; *Merlino v. Connecticut Quarries Co.*, 93 Conn. 57

(104 Atl. 396) ; *Robinson v. State,* 93 Conn. 49 (104 Atl. 491) ; *Baltimore Car F. Co. v. Ruzicka,* 132 Md. 491 (104 Atl. 167) ; *Newport Hydro Carbon Co. v. Industrial Com.,* 167 Wis. 630 (167 N. W. 749) ; *Pekin Cooperage Co. v. Industrial Com.,* 285 Ill. 31 (120 N. E. 530). The following cases are, however, more nearly analogous in their facts to the case at bar.

In *Dzikowska v. Superior Steel Co.,* 259 Pa. 578 (103 Atl. 351), the plaintiff was, just prior to the accident, engaged, with other workmen, in loading steel upon a railroad car, and, while waiting for the arrival of trucks with more steel, his clothing caught fire, and he was so badly burned that death ensued, a few days later. He was wearing a burlap apron, and also had a quantity of the same material wrapped around his arms, for the purpose of protecting himself in handling steel, much of which was oiled, causing his clothing to become more or less saturated with oil. Stepping out of the shipping room, he went into a box car to smoke, and while there, the apron caught fire from a match which he lighted by striking the same upon his trousers. The court, in the course of its opinion, referring to the act of smoking, said:

"Nor do we regard the fact that the accident resulted from his striking a match for the purpose of enabling him to smoke at that time and place as being sufficient to debar him and his dependents from the benefits of the statute. It is not unreasonable for workmen to smoke out of doors during intervals of work where it does not interfere with their duties, and in this instance, the foreman testified that he did not interfere with the men when they were smoking outside of the building, but did not allow smoking inside."

A workman, while at work on one of his employer's jobs, ran a nail into the palm of his hand, whereupon an employee wrapped a bandage around it, which the workman saturated with turpentine. While in the act of lighting a

cigarette with a match, the bandage caught fire, severely burning his hand. The Supreme Court of California sustained the finding of the commissioner awarding compensation. *Whiting-Mead Com. Co. v. Industrial Acc. Co.* (Cal.) 173 Pac. 1105.

In *Haller v. City of Lansing*, 195 Mich. 753 (162 N. W. 335), plaintiff, a workman engaged in grading and leveling a place for a stone crusher, went to a small toolhouse near by, in which the tools of workmen were kept, for shelter while eating his dinner, and was fatally injured by an explosion of gasoline contained in an old can in the building, caused by a match with which he had lit his pipe. His right to compensation was sustained.

Likewise, it was held, in *M'Lauchlan v. Anderson*, 48 Sc. L. R. 349, that a workman employed as a laborer in connection with loading and unloading wagons and accompanying them while being hauled by a traction engine from one quarry to another, who was injured while attempting to get down to recover his pipe, which he had dropped, was entitled to compensation. Under the statutes of Pennsylvania, compensation is allowed for injuries "arising in the course of the employment." The words "arising out of" are not found therein. It will be observed that the commissioner in the case at bar found that the injuries arose in the course of plaintiff's employment, but the case, nevertheless, has some application to this case. The statutes of California and Michigan are similar to our own.

Emphasis is given, in the final order of the commissioner, to the fact that the explosion resulted from plaintiff's lighting a cigarette with a match. No one was able to otherwise account for the explosion. The commissioner found that dynamite caps were used by defendant upon other parts of its premises, but that, under its rules, they were neither used nor permitted in the building where plaintiff was employed, and in which the explosion occurred. At the time

of the explosion, plaintiff was standing near a work table, on which he testified he had placed his tools, preparatory to commencing work. No one saw a dynamite cap upon the table or in its vicinity, and plaintiff was unable to account for the explosion. A dynamite cap similar to those used by defendant was found in a pocket of plaintiff's overalls, some hours after the accident, but he testified that he had not consciously taken it into the building.

The finding of the commissioner does not indicate that defendant's employees were prohibited from smoking upon the premises, or in the building in which plaintiff was employed, or that he was, at the time of the accident, engaged in violating any of the rules of his employment.

The theory upon which compensation has been allowed in cases where the injury occurred while the workman was engaged in protecting himself from cold, or refreshing himself with food or other necessary comforts, is that some indirect benefit at least accrues therefrom to the master.

Smoking, while not a necessity, is a recognized and quite universal habit among workmen, and an indulgence reasonably to be anticipated by employers. The lighting of a cigarette with a match is not, in itself, attended by the slightest hazard. It was rendered dangerous to plaintiff only by the presence of a powerful explosive, in common use upon certain parts of defendant's premises. It may be that the officers of defendant were not negligent or to blame for the presence of the explosive in the building, but the right of the employee to compensation does not arise out of tort, but exists by reason of the provisions of the Workmen's Compensation Act, which defendant had not rejected. The purpose sought to be accomplished by the enactment of laws of this character can be promoted only by a liberal construction of the provisions thereof which benefit both the master and servant, and technical rules should be disregarded in their interpretation. The causal connection

between the employment and the injury complained of is shown by the use of dynamite caps upon the premises, and the presence thereof in the room where plaintiff was regularly employed, and required, by the terms of his employment, to work. In holding that plaintiff's injuries did not arise out of his employment, we are of the opinion that the commissioner erred.

III. The commissioner and one member of the arbitration committee found:

"The accident which caused this injury was apparently due to the striking of a match and the lighting of a cigaret by claimant, pending which proceeding an explosion occurred, evidently of a dynamite cap, the presence of which cannot be definitely accounted for. Since the proximate cause of this injury was the striking of the match for the purpose of lighting a cigaret, a proceeding of no interest or advantage whatever to the employer, and having no necessary connection with his employment, it is decided that, in this proceeding, claimant was out of the orbit of his employment to such extent as to make it necessary for us to decide that he is not entitled to compensation for his said injuries under the compensation statute," which is substantially the language of the commissioner affirming the conclusion and finding of the committee.

4. MASTER AND SERVANT: findings of fact on appeal.

Section 17, Chapter 270, Acts of the Thirty-seventh General Assembly is, in part, as follows:

"The findings of fact made by the industrial commissioner within his powers shall, in the absence of fraud, be conclusive, but upon such hearing the court may confirm or set aside such order or decree of the industrial commissioner, if he finds:

"(1) That the industrial commissioner acted without or in excess of his powers; or

"(2) That the order or decree was procured by fraud; or

"(3) That the facts found by the industrial commissioner do not support the order or decree.

"(4) That there is not sufficient competent evidence in the record to warrant the industrial commissioner in making the order or decree complained of.

"No order or decree of the industrial commissioner shall be set aside by the court upon other than the grounds just stated."

The obvious basis of the finding by the arbitration committee and the commissioner is the undisputed fact that the explosion was caused by plaintiff's lighting a cigarette with a match. But for the proximate cause of the injury, as found by the commissioner, it may fairly be assumed that, if plaintiff had been injured by the explosion of a dynamite cap in the building where the accident occurred, without some possible fault or concurring act upon his part, a different conclusion would have been reached. The finding of the commissioner upon questions of fact is made conclusive and binding upon the court by the statute; but, if the facts found do not support the order, or if there is not sufficient competent evidence in the record to warrant the industrial commissioner in making same, such order may be set aside by the court.

It is apparent that plaintiff had no reason to anticipate the presence of dangerous explosives in the building where he was employed. It is true he did not, in the course of his employment, have anything to do with dynamite caps, nor was he ordinarily exposed to any hazard on account of the presence and use thereof by defendant upon the premises, but they were used by defendant. That the legitimate use thereof was confined to parts of the premises remote from the building in which the accident occurred does not necessarily relieve the master from the duty to make com-

pensation under the act to a servant injured by the explosion of a dynamite cap in a part of the premises which ordinarily, and under the rules of the master, is free from danger on account thereof. The commissioner did not find that plaintiff took the explosive into the building where the accident occurred, and culpability upon his part causing the injury is not shown by evidence of fellow workmen that, some time later, they found a dynamite cap in a pocket of his overalls, which they took from a locker in which plaintiff kept them.

It is, therefore, the opinion of the court that the order of the commissioner denying plaintiff the right to compensation is not supported by the facts found, nor is it warranted by sufficient competent evidence in the record. Under the facts found, the order should have been in favor of plaintiff. The finding and judgment of the court below is, therefore, reversed, the cause to be recommitted to the industrial commissioner for such further hearing or proceedings, in harmony with this opinion, as may be proper and necessary, under the provisions of the statute.—*Reversed.*

Ladd, C. J., Gaynor and Preston, JJ., concur.