WILLIAMS CONSTRUCTION COMPANY, INCORPORATED, ET AL. *V.* JESSE R. GARRISON, JR.

[No. 958, September Term, 1978.]

*Decided April 19, 1979.*

---

The cause was argued before MOYLAN, LISS and COUCH, JJ.

*Steven A. Charles,* with whom were *Frank J. Tripoda* and *Hardwick, Tripoda & Harris* on the brief, for appellants.

*Sidney Blum,* with whom was *Eugene A. Alexander, III,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

Williams Construction Company, Inc., employer and American Automobile Insurance Company, insurer (hereinafter jointly designated as appellants), have filed this appeal from an order of the Circuit Court for Baltimore County which granted a summary judgment in favor of the claimant, Jesse R. Garrison, Jr. (hereinafter designated as appellee).

Appellants contend that the trial court erred in affirming an order of the Workmen's Compensation Commission dated August 9, 1977 by which the Commission found that the appellee was entitled to additional temporary total disability and was permanently totally disabled as a result of an accidental injury sustained by the appellee on July 25, 1974 which arose out of, and in the course of, his employment.

Appellants raise the following issues in support of their contention that the trial judge should not have granted appellee's motion for summary judgment:

(1) That the injuries and disability suffered by the appellee were caused by the claimant's own reckless and unreasonable conduct; and (2) that the initial compensable injury of July 25, 1974 was not the proximate cause of the injuries sustained by the appellee on December 28, 1974, and that the appellee's permanent total disability occurred by reason of appellee's own intervening unreasonable conduct.

The facts in the case are virtually undisputed. On August 13, 1974, appellee filed a claim for compensation with the Workmen's Compensation Commission in which he stated that on July 25, 1974, while in the employ of Williams Construction Company as a bulldozer operator, he fell from the tracks of a pusher-tractor and sustained injuries to his back. The appellants did not contest the claim, and the Commission found the claim to be compensable. The insurer paid temporary total benefits for the period the appellee did not attend work and for the medical expenses incurred. No claim for permanent partial benefits was filed by the appellee. Appellee returned to his same employment with Williams Construction Company on August 13, 1974 and worked for an additional four months as a bulldozer operator until December 6, 1974 when he was laid off. Appellee then began to work for himself as a tree trimmer. On December 28, 1974, the appellee, while carrying a chain saw, ascended a forty-foot ladder and was engaged in trimming a tree when he fell from the ladder, struck the ground and sustained extremely serious injuries. In the latter part of 1976, after extensive medical treatment, the appellee requested that the claim involving his accident of July 25, 1974 be reopened on the theory that the injuries sustained by the claimant in his fall from the ladder on December 28, 1974 were caused by the disability which resulted from his accident of July 25, 1974. Appellants raised issues before the Commission as to whether the appellee sustained an accidental personal injury arising out of, and in the course of, employment with Williams Construction Co. on December 28, 1974. They also raised the

issue of whether the disability of the employee was the result of an accidental personal injury arising out of, and in the course of, employment on July 25, 1974. The Commission held that the appellee was entitled to additional temporary total benefits and was permanently totally disabled as a result of the accident of December 28, 1974, and that that accident was attributable to the disabilities he sustained as a result of his injury on July 25, 1974. An award of benefits was made reflecting the Commission's decision, and the appellants appealed from the award to the Circuit Court for Baltimore County. Depositions were taken and filed with appropriate affidavits by the parties, and after a hearing, the trial judge granted appellee's motion for summary judgment affirming the decision of the Workmen's Compensation Commission. It is from this action that this appeal was taken.

The depositions and affidavits submitted in support of the several motions for summary judgment filed respectively by the appellants and appellees established that shortly after the original fall by the appellee in the accident of July 25, 1974, the claimant began to experience dizzy spells intermittently which required him to take medication prescribed by the treating physician, but which were not so severe as to prevent claimant from working. Although the claimant complained of dizziness to the attending physician on three separate visits, the doctor allowed him to return to work and placed no restrictions on the appellee. The claimant testified that when he returned to work for Williams Construction he noticed that he would from time to time suffer dizzy spells in which everything would "go round and round," and during which he would hang on to something until the dizzy spell subsided.

Appellants admit they have no evidence to contradict the appellee's contention that the dizzy spells which ultimately resulted in his fall from the ladder were related to the dizzy spells he experienced as a result of the original fall in July. They urge, however, that the appellee was aware of his condition; that he acted in a reckless and unreasonable manner in climbing the ladder knowing that he was having dizzy spells; and that if, in fact, the dizzy spells did cause his fall, then his reckless and unreasonable conduct in climbing

the ladder amounted to a break in the direct causal relationship between the accident of July, 1974 and the injuries sustained in the fall in December of 1974.

Appellants rely for legal sustenance on *Watts v. Young Co.,* 245 Md. 277, 225 A. 2d 865 (1967), a case which is factually distinguishable from the case *sub judice.* In *Watts,* the Court of Appeals had before it the case of a claimant who had sustained injuries and who refused to undergo corrective surgery. The Court, in holding that the refusal to undergo surgery justified the withholding of an award for permanent partial disability, gave as one of its reasons the conclusion that the claimant's intentional and unreasonable conduct broke the chain of causation between his employment and his injury. It held that to the extent the claimant's disability was found to relate to his arbitrary refusal to assent to treatment, such disability did not arise out of his employment. In support of this holding, the Court cited 2 Larson, Workmen's Compensation Law sec. 13.22 (1952).

In a discussion of the range of compensable consequences, Larson suggests the rule should be that when the primary injury is shown to have arisen out of, and in the course of, employment every natural consequence that flows from the injury likewise arises out of the employment, unless the injury is the result of an independent intervening cause attributable to claimant's own intentional conduct. The employee's own contributory negligence with regard to the primary injury is ordinarily not an intervening cause preventing initial compensability. But when the question is whether compensability should be extended to a subsequent injury or aggravation related in some way to the primary injury, Larson suggests the basic rule should be that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury. He then suggests that when a subsequent injury arises out of what he designates a "quasi-course" activity, such as a trip to the doctor's office, the chain of causation should not be deemed broken by mere negligence in the performance of that activity, but only by intentional conduct which may be

regarded as expressly or impliedly prohibited by the employer. Larson further develops his legal theory by stating that when the injury following the initial compensable injury does not arise out of a "quasi-course" activity, as when a claimant with an injured hand engages in a boxing match, the chain of causation may be deemed broken by either intentional or negligent claimant misconduct. 2 Larson, *supra,* sec. 13.11.

Although our courts have not expressly adopted the proposition that Larson posits, the law in Maryland, by statute and case law has considered the effect of the conduct of a claimant on his right to compensation benefits.

The Court of Appeals, in *Dayton v. Davis,* 218 Md. 614, 618, 147 A. 2d 699 (1959), speaking through Chief Judge Brune, said: "There are very few unavoidable accidents; negligence produces most of them and an employee's non-wilful negligence — his lapse from care — does not keep an injury producing occurrence from being an accident nor bar his right to compensation."

Pursuant to the Workmen's Compensation Law, the right to compensation exists without reference to the care of the employee, and compensation is not denied by reason of contributory negligence on his part.

The Legislature of Maryland has explicitly stated the circumstances under which an employee otherwise eligible for compensation benefits will be denied those benefits in Article 10, Section 45 of the Annotated Code of Maryland (1957, 1979 Repl. Vol.):

> Notwithstanding anything hereinbefore or hereinafter contained, no employee or dependent of any employee shall be entitled to receive any compensation or benefits under this article on account of any injury to or death of an employee caused by self-inflicted injury, the willful misconduct, or where the injury or death resulted solely from the intoxication of the injured employee or solely from the effect upon him of any narcotic, depressant, stimulant, hallucinogenic or hypnotic

drug or from the effect upon him of any other drug which renders him incapable of satisfactorily performing his job, except when such drug has been administered or taken in accordance with a physician's prescription.

The only portion of this section which might even remotely be applicable in this case is the segment involving the willful misconduct of an employee. 99 C.J.S. *Workmen's Compensation* Sec. 258 (1958) defines willful misconduct as the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its probable consequences. *Ford Motor Co. v. Smith,* 283 Ky. 795, 143 S.W.2d 507 (1940); *Caraher v. Sears Roebuck & Co.,* 124 Conn. 400, 200 A. 324 (1938); *Belyus v. Wilkinson, Gaddis & Co.,* 116 N.J. Law 92, 182 A. 873 (1936).

Misconduct includes the exposure by an employee to an injury if he knows of, and appreciates, his liability to injury. An employee is not guilty of willful misconduct because he is negligent; *Mancini v. Scovill Mfg. Co.,* 98 Conn. 591, 119 A. 897 (1923); or because he acted imprudently, *Hoodenpyle v. Patterson,* 197 Tenn. 621, 277 S.W.2d 351 (1955); thoughtlessly, *American Mutual Liability Ins. Co. v. Garth,* 174 Tenn. 297, 125 S.W.2d 140 (1939); or unwisely, *Carvey v. W. D. Young & Co.,* 218 Mich. 342, 188 N. W. 392 (1922).

In *Harris v. Dobson & Co.,* 150 Md. 71, 132 A. 374 (1926), the Court of Appeals said that willful misconduct may consist of a disregard of rules or orders, but there must be something more than thoughtlessness, heedlessness, or inadvertence; there must be at least a willful breach of the rule or order.

In *Karns v. Liquid Carbonic Corporation,* 275 Md. 1, 338 A. 2d 251 (1975), the Court of Appeals said willful misconduct may be found where the employee intended to place himself in a position whereby he might expect to meet with injury or death, and in carrying out his intention meets his death as a result of the injuries sustained. The actions of the employee must be such as to show that he intended thereby to place himself in such a hazardous position that injury or death might result as the reasonable consequence of his act.

We do not reach the conclusion that the appellee's conduct in this case amounted to such willful misconduct as to create an intervening superseding cause which was sufficient to break the chain of causation between the original injury and the subsequent injury so as to preclude the claimant from being entitled to compensation benefits flowing from the original accident.

We note from the testimony of the various witnesses included in the record extract that there is no evidence that the employer imposed any restrictions on the appellee's performance of his duties for the employer subsequent to the claimant being able to return to work. The appellee performed essentially the same climbing duties in the operation of the tractor bulldozer during the four months he remained employed by the appellant after the initial injury. The attending physician had knowledge of the appellee's complaint of giddy spells and dizziness. He was also aware of the circumstances of the fall from the bulldozer and that the claimant had struck his head in the fall. In addition, the doctor had made a notation in his records that several days after the accident the appellee had attempted to return to work but was too dizzy to continue to perform his duties. Although the complaints of giddiness continued on three separate visits to the doctor, the doctor, nevertheless, felt the appellee was ready to return to work by August 13, 1974. The doctor did not place any restrictions on the claimant's activities. And although the doctor felt that the dizzy spells were caused by a cerebral contusion, he did not feel it was warranted to send the appellee to anyone for additional tests. The attending physician indicated that he felt the appellee was capable of performing his functions when he discharged him. Not only were there no work restrictions placed on the appellee by the doctor, but the doctor's advice was also devoid of any restrictions whatsoever regarding any other activities in which the claimant might engage. In the light of this factual situation, the conduct of the employer and the paucity of instructions by the physician, we think it totally unreasonable to hold that the actions of the appellee were of such a reckless and unreasonable nature as to amount to

conduct which would break the chain of causation between the initial injury and the subsequent injury.

Thus it is clear that in the case *sub judice,* as there were no restrictions placed on the employee's activities either by the prior employer or the attending physician, the appellee's conduct in ascending the ladder in view of his prior episodes of dizziness was, at the most, poor judgment rather than willful misconduct.

The trial judge in his consideration of the depositions and exhibits filed in support of the motion for summary judgment by the appellee concluded that there was no disputed issue of fact as to whether the accident of December 28, 1974 was the direct result of the injuries sustained by the appellee, and that as a matter of law and of fact that the appellee's conduct in climbing the ladder, in view of his prior episodes of dizziness, was not sufficient to be an intervening cause so as to destroy the chain of causation between the original injury and the subsequent fall which resulted in the appellee's paralysis.

As a reviewing body, we are bound by our own Maryland Rule 1086 which states that this Court will review the case upon both the law and the evidence, but the judgment will not be set aside unless clearly erroneous. We find that the conclusions of fact by the trial judge are not erroneous and are correct as to the law.

*Judgment affirmed; costs to be paid*
*by appellants.*